# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **EDITH J. HERMES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.** CIV-20-871-SLP |
| ) | |
| **OKLAHOMA ARTHRITIS CENTER, P.C.,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

### (JURY TRIAL DEMANDED)

Plaintiff, Edith J. Hermes, through her attorney of record, Melvin C. Hall of Riggs, Abney, Neal, Turpen, Orbison & Lewis, herein files this Complaint against Defendant, Oklahoma Arthritis Center, P.C. In support of her Complaint, Plaintiff states as follows:

## INTRODUCTION

This action arises under the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. to address Ms. Hermes' rights from discriminatory employment practices by the Oklahoma Arthritis Center, P.C. (OAC). Ms. Hermes also brings state law causes of action for illegal discrimination based on her disability in violation of the Oklahoma Anti-discrimination Act (OADA), Okla. Stat. tit. 25, § 1101 et seq. Finally, Ms. Hermes alleges a claim of wrongful discharge public policy violation.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1140, 42 U.S.C. § 12101, and 29 U.S.C. §§ 1331 & 1343.

2. Ms. Hermes also brings state law claims under Okla. Stat. tit. 25, § 1101 et seq., and state common law regarding wrongful discharge public policy violation. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) because the OAC operates in this district, and the unlawful conduct giving rise to Ms. Hermes' claims occurred in this district.

4. Actual damages, declaratory, injunctive, and equitable relief are sought pursuant to 29 U.S.C. § 1001 and 42 U.S.C. § 12101 et seq.

5. Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 12101, Okla. Stat. tit. 25, § 1101 et seq., and state common law.

6. Costs and attorney fees may be awarded pursuant to 29 U.S.C. § 1001, 42 U.S.C. § 12101, Fed. R. Civ. P. 54, and Okla. Stat. tit. 25, § 1350.

7. This action properly lies in the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 1391(b) because the claims arose in this district, and pursuant to 42 U.S.C. § 12101, the unlawful employment practices occurred in this district.

## PARTIES

8. Plaintiff, Edith J. Hermes, is an individual citizen and resident of the United States and the state of Oklahoma. At all times relevant herein, Ms. Hermes was a resident

of Oklahoma County.

9. Plaintiff is a former employee of Defendant. She was formerly employed at Defendant's Edmond, Oklahoma location.

10. Defendant, Oklahoma Arthritis Center, P.C., is an Oklahoma corporation licensed to do business in the state of Oklahoma.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Ms. Hermes' Charge of Discrimination was timely filed with the EEOC on July 27, 2020. The EEOC assigned Ms. Hermes' Charge of Discrimination with Charge Number 564-2020-01684.

12. On August 14, 2020, the EEOC issued a Notice of Right to Sue for this charge.

13. This lawsuit is filed within 90 days of receipt of Ms. Hermes' Notice of Right to Sue.

## PRELIMINARY STATEMENT

14. In 2012, Ms. Hermes was diagnosed with Renal Tubular Acidocis (RTA). This medical condition causes Ms. Hermes to develop kidney stones.

15. Ms. Hermes had kidney surgery in 2012.

16. Ms. Hermes is required to take a high dose of potassium daily as her kidneys do not regulate potassium.

17. In November 2016, Ms. Hermes started working at the OAC as a new patient coordinator.

18. The OAC is self-insured.

19. In January 2019, Ms. Hermes started getting sick from her RTA, and she started to see Physician's Assistant, Sharon Bolton at OAC's wellness center.

20. PA Bolton ran multiple tests on Ms. Hermes, and she continued taking antibiotics for a few months. In June 2019, Ms. Hermes had a kidney scan which revealed multiple large kidney stones (2 cm to 3 cm) in both kidneys that would require invasive surgery to be removed.

21. The OAC is self-insured, and its administrator is Kempton Insurance. Ms. Hermes was told by a representative of Kempton they had set her up to have a nephrolithotomy surgery with Dr. Herlihy. Ms. Hermes was informed someone from Dr. Herlihy's office would call her and set up an appointment to discuss the surgery. Ms. Hermes did not receive a call and she spoke with Jeff Warner HR Manager as well as left messages with Kempton. Jeff Warner also spoke with Terry Brown with Kempton about the delay regarding the surgery. After much time had passed, Ms. Hermes sent a text to Kanda with Kempton asking when someone would be contacting her and Kanda wrote back apologizing and said she couldn't give details but the surgery wasn't going to work out after all but they had another doctor they wanted her to see.

22. In September 2019, Ms. Hermes was required to see a doctor affiliated with Surgical Center of Oklahoma where the OAC's services are covered. The surgeon at this center wanted to perform a lithrotripsy, which Ms. Hermes was not a candidate for because of her kidney disease and the large kidney stones she had. The OAC and Kempton Insurance pushed Ms. Hermes very hard to have this procedure, even though it was not in her best interest. Ms. Hermes then spoke with an OAC doctor, Dr. Anna Kumar, and she was very upset that the OAC had tried to push Ms. Hermes into a medical procedure that

4

was not appropriate for her medical condition. Dr. Kumar referred Ms. Hermes to a surgeon, Dr. Gennady Slovodov, at OU Medical Center.

23. On September 20, 2019, Ms. Hermes saw Dr. Slobodov who, after reviewing her scans, told Ms. Hermes if she had the procedure the OAC wanted her to have it would be life-threatening and she would have probably lost a kidney.

24. Dr. Slobodov scheduled Plaintiff for surgery on October 20, 2019. However, the surgery was cancelled because Ms. Hermes was told that the OAC could not negotiate the cost of the surgery with OU Medical Center.

25. Ms. Hermes was told she would have to pay a $5,000 deductible if she went ahead with the surgery. However, because it was already so late into the plan year and Ms. Hermes needed two surgeries, she would have had to pay a $5,000 deductible in 2019, and she would have to pay another $5,000 deductible for her second surgery in the 2020 plan year. Therefore Ms. Hermes chose to wait until after the first of the year to get money together for the deductible and to be covered by both surgeries.

26. Ms. Hermes continued to get sicker as time passed. Ms. Hermes had an abdominal and kidney scan done On December 3, 2019 and on the morning of December 4, 2019, OAC Wellness Center nurse called Ms. Hermes and told her to go directly to the emergency room. Ms. Hermes was admitted and given IV antibiotics and potassium and was released on December 7, 2019.

27. On January 14, 2020, Ms. Hermes had her first kidney surgery, and was off work until February 3, 2020.

28. When the OAC first became aware of the COVID-19 pandemic, Les Cook,

5

OAC's Purchasing Agent, started asking OAC's CEO, Bill Babcock, about ordering supplies and starting to follow CDC Guidelines regarding COVID-19. Mr. Cook was then told by Mr. Babcock not to bring it up, it was a hoax, and he didn't want to hear about it again.

29. Les Cook had major concerns for the OAC's patients and its employees regarding the COVID-19 pandemic.

30. Les Cook informed Ms. Hermes that the OAC was <u>not</u> following CDC Guidelines regarding COVID-19.

31. On March 16, 2020, the OAC sent two employees, Raegan Danks and Melissa Weldon, home to self-quarantine.

32. On March 22, 2020, Ms. Hermes received a text message that two of the OAC's doctors, Dr. Anna Kumar and Dr. Linda Zacharias, were not coming back into the office because they were uncomfortable coming in and being exposed to COVID-19.

33. Ms. Hermes replied to the text message, stating that she was feeling achy and had a slight fever. The site manager, Charla James, wrote back that if she was feeling bad to please stay at home, and that anyone choosing to stay home it would not be held against them or their position, and that employees need to understand if they choose to stay home it will not be held against them or their position and that she worried about Ms. Hermes catching this (virus).

34. On March 23, 2020, Heiporo Bradley, sent a text message with instructions on how to work remotely. Ms. Hermes could not get the Remote Desktop Application to work on her personal computer, so OAC IT Manager, Josh Randals, delivered a laptop to

6

Ms. Hermes's home that would enable her to work from home.

35. On March 25, 2020, Les Cook sent Thomas Prescott an email announcing his resignation due to the lack of Coronavirus safety measures within the OAC's facilities.

36. On March 25, 2020, Ms. Hermes learned that one of her teammates, Jamie Watson, and one of the OAC's doctors, Dr. David Speegle, may have been exposed to COVID-19, and they were sent home to self-quarantine.

37. On March 26, 2020, Ms. Hermes learned that another one of her teammates, Cait Green, was told, by Physician's Assistant Sharon Bolton, to go home and self-quarantine.

38. On March 27, 2020, Ms. Hermes' supervisor called her and told her that she needed to be back in the office on Monday, March 30, 2020. Ms. Hermes advised that she was not comfortable being in the office because of her medical condition. After the telephone call ended, Ms. Hermes sent a text message to her supervisor with the Declaration of Emergency from the city of Edmond's website, which stated: "people of any age who have serious underlying medical conditions, collectively referred to as 'vulnerable individuals', shall stay in their homes or place of residence until May 31, 2020." Ms. Hermes' RTA made her a "vulnerable individual."

39. On Sunday, March 29, 2020, Ms. Hermes received a text message from her supervisor stating, "I'm so sorry I didn't call you back. You need to come back to campus tomorrow." Ms. Hermes called her and let her know that she was not comfortable coming back in at a high risk, and we have the order to be safer at home. Ms. Hermes was told not to login to OAC in the morning to work, and if she was to stay at home, it would be unpaid.

40. On March 31, 2020, Ms. Hermes received a telephone call from Charla James, Heiporo Bradley, and HR Manager Thomas Prescott. Ms. Hermes was told she could not continue to work from home, and she needed to come back into the office because the OAC was an essential business and Ms. Hermes' health didn't matter.

41. On April 1, 2020, Ms. Hermes had a conversation with Thomas Prescott about filing for unemployment while on unpaid leave, and Mr. Prescott told her she could as long as she sent an email stating she did not want to file for FMLA, and would continue on unpaid leave due to the stay at home order.

42. On April 2, 2020, Mr. Prescott called Ms. Hermes and said they changed their mind that her unpaid leave was not approved, and she would need to be back in the office the next day or be terminated.

43. On April 2, 2020, Ms. Hermes sent Shelley Haugeto and Thomas Prescott an email stating that the only reason she was not at work is because of the State and City orders for vulnerable people to stay at home.

44. On April 3, 2020, Ms. Hermes received an email from Shelley Haugeto stating that she was terminated as of today.

## COUNT I
## ERISA VIOLATION

45. Ms. Hermes incorporates by reference all previous allegations as if fully set forth herein.

46. The OAC terminated Ms. Hermes for having exercised rights to medical benefits, as well as the likelihood that she would continue to do so with respect to future

reasonable and necessary medical benefits relating to the treatment of her kidney disease.

47.     As a direct and proximate result of the termination of her employment, Ms. Hermes suffered a loss of wages, as well as a loss of benefits acquired. And Ms. Hermes' termination resulted in her paying medical bills that were not covered by any medical insurance or plan.

48.     Ms. Hermes demands judgment against the OAC for loss of compensation, retroactive benefits, damages, and all other remedies allowable by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et. seq., including attorney fees.

## COUNT II
## DISCRIMINATION BASED ON DISABILITY

49.     Ms. Hermes incorporates by reference all previous allegations as if fully set forth herein.

50.     The OAC engaged in intentional and unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12102 et seq. and Okla. Stat. tit. 25, § 1101 et seq. The discriminatory practices include, but are not limited to, terminating Ms. Hermes on April 3, 2020, due to her disability in violation of the ADA.

## COUNT III
## WRONGFUL DISCHARGE PUBLIC POLICY VIOLATION

51.     Ms. Hermes incorporates by reference all previous allegations as if fully set forth herein.

52.     The public policy behind an employee with a serious underlying medical condition from returning to work was manifested in the Governor of Oklahoma's Executive Order 2020-07, issued April 2, 2020, which expressly provided, "people of any age who

have serious underlying medical conditions, collectively referred to as 'vulnerable individuals,' shall stay in their home or place of residence." To hold otherwise would exacerbate communicable disease and expose the most vulnerable people.

53. Ms. Hermes was terminated after she refused to return to work due to her serious underlying medical conditions, which made her particularly vulnerable to COVID-19.

54. As such a public policy exception exists which would prohibit an employee from being terminated solely for not working in an environment that placed Ms. Hermes at a high risk of contracting COVID-19.

55. This is an exception to at-will employment as articulated by *Burk v. K-Mart Corp.*, 1989 OK 22, ¶ 17, 770 P.2d 24 and its progeny.

## PRAYER FOR RELIEF

Plaintiff, Edith J. Hermes, seeks to recover against Defendant, the Oklahoma Arthritis Center, P.C.:

1. Actual damages in the form of lost back pay and benefits.

2. Reinstatement, or in lieu of reinstatement, Ms. Hermes seeks front pay and all lost future earnings projected to her retirement.

4. Compensatory Damages for future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

5. Punitive damages for the wanton and willful deprivation of Ms. Hermes' civil rights.

6.  Reasonable attorney fees and court costs, as well as other relief as the court deems appropriated

          Respectfully submitted,

          RIGGS, ABNEY, NEAL, TURPEN,
            ORBISON & LEWIS

          s/ Melvin C. Hall
          Melvin C. Hall, OBA No. 3728
          528 NW 12th Street
          Oklahoma City, OK 73103
          Telephone: (405) 843-9909
          Facsimile: (405) 842-2913
          Email: mhall@riggsabney.com
          ATTORNEY FOR PLAINTIFF
          EDITH J. HERMES

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**